UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nathaniel Asake, et al.,                                    Civil No. 15-2110 (PJS/FLN)

                          Plaintiffs,

          v.                                                **REPORT AND**
                                                            **RECOMMENDATION**

Brian T. Moynihan, et al.,

                          Defendants.
_____

Nathaniel Asake, *pro se*, for Plaintiffs.
Mark Schroeder and Michael Stinson for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 17,

2015 on Defendants Brian Moynihan, Bank of America, N.A., and BAC Home Loans Servicing,

L.P.,'s motion to dismiss (ECF No. 13), Defendant Robert Wilmers's motion to dismiss (ECF No.

5), and Plaintiffs' motion to deny Defendants' motion to dismiss (ECF No. 21). The matter was

referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local

Rule 72.1. *See* Order, ECF No. 12. For the reasons set forth below, the Court recommends that

Defendants' motions be **GRANTED**, Plaintiffs' motion be **DENIED**, and this case **DISMISSED**

**WITH PREJUDICE**.

**I. FINDINGS OF FACT**

          Plaintiffs' claims revolve around two mortgage loans originated by Bank of America, N.A.

and secured by property located at 1xxx Pontiac Lane, Chanhassen, Minnesota ("Property"). *See*

Compl. 2, Ex. 1, ECF No. 1. The first loan was executed on August 24, 2006 and had an original

principal balance of $143,920. Bank of America, N.A., subsequently assigned this loan to M&T

Bank on or about January 23, 2012 (the "M&T Loan"). *See* Anderson Aff. Ex. 4, ECF No. 16. The

second loan was also executed on August 24, 2006 and had an original principal balance of $35,980 (the "BANA Loan"). Bank of America, N.A., claims that there has been no assignment of the BANA Loan. ECF No. 16, Ex. 5. Plaintiffs ceased making payments on both loans as of March 20, 2015. *See* ECF No. 1, Ex. 1 at 2. As justification for their lack of payments, Plaintiffs assert that "they had a right to disclosures regarding mortgage note securitization practices," specifically to the disclosure of "profits that would inure to [Defendants'] benefit through securitization." In other words, Plaintiffs claim that because Bank of America, N.A., did not disclose that it may securitize Plaintiffs' loans, Plaintiffs have no obligation to continue making payments on the loans.

Plaintiffs initially filed the present *pro se* action in Minnesota state court on March 31, 2015 against Brian T. Moynihan in his capacity as CEO of Bank of America, Bank of America, N.A. ("BANA"), BAC Home Loans Servicing, L.P.[1], and Robert G. Wilmers in his capacity as CEO of M&T Bank. The Court construes the Complaint as seeking equitable relief from their obligations under the two mortgage agreements. Defendants removed the case to federal court on April 24, 2015. Notice of Removal, ECF No. 1. Defendants now seek to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Proecedure.[2]

---

[1]  As of July 1, 2011, Defendant BAC Home Loans Servicing, LP merged with Defendant Bank of America, N.A. and thus no longer exists as a separate legal entity. Accordingly, BAC Home Loans Servicing, LP and Bank of America, N.A. will be hereinafter collectively referred to as "BANA".

[2]  Plaintiffs did not file a memorandum of law in opposition to Defendants' motions to dismiss. Instead, on July 9, 2015, Plaintiffs filed a self-stylized Motion to Deny Defendants' Motion to Dismiss." *See* ECF No. 21. This submission was over six weeks late per LR 7.1(c)(2), and need not be considered by this Court. *See* LR 7.1(g). Nonetheless, the Court will treat Plaintiffs' motion as a memorandum of law in opposition to Defendants' motions and will consider it in making its decision.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Although a pro se litigant is held to "less stringent standards than formal pleadings drafted by lawyers," the litigant is not excused from the requirement that a complaint give the defendant fair notice of the claim and the factual allegations on which it rests. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3

## III. ANALYSIS

**A.      Defendants Duly Filed Motions under the Federal Rules of Civil Procedure**

Plaintiffs argue that Defendants' motions to dismiss should be denied because they "unnecessarily forum-shopp[ed]" by removing this case to federal court. ECF No. 21 at 2. However, a defendant is entitled to remove an action from state court to federal court if the federal court would have had original jurisdiction over the action in the first place. *See* 28 U.S.C. § 1441. Plaintiffs do not argue that this Court lacks jurisdiction over this case. Accordingly, the fact that Defendants removed the present case to federal court immediately prior to filing their motions to dismiss is not a reason to deny Defendants' motions.

**B.      Plaintiffs' Claims Against Moynihan and Wilmers Must Be Dismissed**

Generally, an officer of a corporation cannot be held personally liable for the actions of the corporation. *Rockney v. Blohorn*, 877 F.2d 637, 642 (8th Cir. 1989) ("It is hornbook law that a corporate employee functioning purely as such acts not *as* but solely *for* the corporate employer." (emphasis in original)); *see also United States v. Martin*, 337 F.2d 171, 175 (8th Cir.1964) ("A corporation is an entity separate and distinct from its stockholders and the persons controlling it."). Whether to pierce a corporate veil and hold an officer personally liable is a legal determination that is governed by state law. *See Minn. Power v. Armco., Inc.*, 937 F.2d 1363, 1367 (8th Cir. 1991). Under Minnesota law, piercing the corporate veil requires a court to:

> 1) analyze whether the corporation functioned as the mere instrumentality of the principals a party is attempting to reach by piercing the corporate veil, and 2) determine whether injustice or fundamental unfairness would occur if the corporate veil were left intact. Whereas the first prong involves questions of fact, the second prong raises equitable considerations.

*Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir.1997)*; see also Victoria Elevator Co. v.*

*Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).

No where in the Complaint do Plaintiffs allege any facts that connect Moynihan or Wilmers to the two loans at issue. *Minn. Power*, 937 F.2d at 1367. Indeed, Plaintiffs identify only BANA and M&T Bank in the recitation of facts concerning the two loans in the Complaint. *See* ECF No. 1, Ex. 1 at 2. Moreover, Plaintiffs do not allege any facts or any action on the part of Moynihan or Wilmers that should be attributed to either BANA or M&T Bank. Accordingly, the Court concludes that Plaintiffs have not alleged sufficient facts that show BANA or M&T Bank functioned as "mere instrumentalities" of either Moynihan or Wilmers. Therefore, Plaintiffs have not met the first prong of the corporate veil analysis. Because the Court concludes that Plaintiffs have not alleged sufficient facts to satisfy the first prong of the analysis, the Court does not reach the second prong of the analysis. *See Stoebner v. Lingenfelter*, 115 F.3d at 580 (in the absence of finding equitable considerations, it was not necessary for the fact-finder to decide whether the corporation was an alter ego of the principal).

Based on the foregoing, Plaintiffs' claims against Moynihan and Wilmers must be dismissed.[3]

## C.     Claims Against BANA

As an initial matter, for purposes of deciding the present motion to dismiss, the Court assumes without deciding that both the M&T Loan and the BANA Loan were securitized as part of

---

[3] Because the Court finds that there are no facts or allegations whatsoever concerning Moynihan or Wilmer in the Plaintiffs' Complaint sufficient to state a claim, the Court does not reach the issue of whether Plaintiffs properly served Wilmer. Minn. R. Civ. P. 4.05; Fed. R. Civ. P. 12(b)(5).

a pooling and servicing agreement.[4] Although Defendants claim that the BANA Loan was never securitized, Plaintiffs' complaint suggests that it was. When deciding a motion to dismiss, the Court assumes facts alleged in the complaint are true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738.

### 1.      Plaintiffs unjust enrichment claim

Plaintiffs' assert that at the time they entered into a contract with BANA for each loan, BANA had a duty to disclose "facts germane to the intent, scope, scale, and effect" of their agreement. *See* ECF No. 1, Ex. 1 at 3. Essentially Plaintiffs' argue that BANA was unjustly enriched when it fraudulently withheld information regarding "the enormous profits [that] would inure to [BANA's] benefit through securitization" and thereby fraudulently securitized the two loans. *Id.* After reviewing the record, the Court concludes that Plaintiffs' claim is without merit.

"A claim for unjust enrichment requires that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Kaylor v. Bank of Am.*, *N.A.*, No. 12-1586 , 2012 WL 6217443 (D. Minn. Dec. 13, 2012). However, the Court does not find any provision in either the BANA Note and Mortgage or the M&T Bank Note and Mortgage that precluded transfer of the Notes or Mortgages. Therefore, BANA could not have been unjustly enriched even if it acted exactly as Plaintiffs allege. Additionally, allowing the Plaintiffs to rescind their original agreement with BANA would result in their receiving the benefit of the loans, without the bank receiving repayments.

Accordingly, the Court concludes that Plaintiffs have not alleged facts sufficient  to

---

[4]       In fact, it seems certain that at least the BANA loan was not securitized or part of a pooling and servicing agreement, and no claims have been alleged against M&T Bank for the loan assigned on January 23, 2012. However, for the purposes of deciding the present motions to dismiss, the Court assumes all facts alleged by Plaintiffs are true and affords Plaintiffs all reasonable inferences.

constitute unjust enrichment or for which an equitable remedy is available.

> ## 2.      Plaintiffs mortgage fraud claim

Plaintiffs claim that BANA fraudulently withheld the fact from Plaintiffs that their loans would be securitized. Under Minnesota law, a plaintiff must establish five elements to succeed on a claim for fraudulent misrepresentation:

> that (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007) (internal quotations omitted). First, Plaintiffs cite no authority, and the Court knows of none, that require a lender to disclose the fact that the loan may be securitized or assigned. However, assuming without deciding that Plaintiffs' allegations are true, Plaintiffs still cannot satisfy the fourth and fifth prongs of the analysis. Plaintiffs' have alleged absolutely no facts that they relied on BANA's omission, or that this omission induced them to enter into the mortgage agreement in the first place. Furthermore, Plaintiffs have not alleged any facts that they suffered pecuniary damages as a result of entering into the loan agreement without this information. Indeed, Plaintiffs have only alleged profits that would inure to BANA, not that they lost any money. This does not constitute damages suffered by Plaintiffs.

Additionally, "parties who allege fraud must plead detrimental reliance with particularity—including 'how [the defendant] intended plaintiffs to act in reliance on each of the alleged misrepresentations, the nature of plaintiffs' justifiable reliance on each misrepresentation, and the damage resulting from such reliance.'" *Stumm v. BAC Home Loans Servicing, LP*, 914 F.

Supp. 2d 1009, 1013 (D. Minn. 2012) (quoting *Allison v. Security Ben. Life Ins. Co.*, 980 F.2d 1213,

1216 (8th Cir.1992); *see also* Fed. R. Civ. P. 9(b)). As stated above, Plaintiffs have not alleged any

facts that BANA's omission of potential profits through mortgage securitization induced them to

enter into the mortgage agreements or that Plaintiffs suffered pecuniary damages as a result of such

reliance. Accordingly, the Court finds that the Plaintiffs have not alleged facts sufficient to constitute

fraudulent misrepresentation, let alone mortgage fraud. Therefore, Plaintiffs mortgage fraud claim

must be dismissed.

### 3.    Plaintiffs' Truth in Lending Act ("TILA") claims

Plaintiffs' allege that they are entitled to rescind the loan agreements due to BANA's failure

to disclose the fact that the loans would be securitized. ECF No. 1, Ex. 1 at 3. A claim brought under

TILA, however, must be filed within three years after the alleged disclosure violation. 15 U.S.C. §

1640(e). Plaintiffs allege that Defendants' disclosure violations occured on August 24, 2006, the

date Plaintiffs entered into the loan agreements. Accordingly, the statute of limitations began to run

on August 24, 2006 and therefore expired on August 24, 2009. Plaintiffs claims are therefore

untimely.

Regardless, even if Plaintiffs claims were timely, the Court finds no provision in the TILA

that requires BANA to disclose to Plaintiffs that their loans may be subject to securitization in the

future. *See* 15 U.S.C. § 1601, *et seq*. Accordingly, Plaintiffs claims under TILA must be dismissed.

### 4.    Plaintiffs' quiet title claim fails as a matter of law

Plaintiffs' claim to quiet title is derived from *In Re Foreclosure Cases*, No. 07CV2532, 2007

WL 3232430 (N.D. Ohio Oct. 31, 2007), on which they rely in their Complaint. *See also* ECF No.

1, Ex. 1 at 5.  In *In Re Foreclosure Cases*, the defendants' mortgages were assigned to plaintiff-

lenders who then instituted foreclosure proceedings against them. The district court for the Northern District of Ohio dismissed these cases finding that plaintiffs failed to show some actual injury suffered as a result of the illegal conduct of the defendants as required by Article III of the U.S. Constitution. *Id.* at *1 (citing *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). The plaintiff-lenders could not show an actual injury suffered because they failed to comply with Ohio recording laws and, therefore, never legally acquired an interest in the properties they sought to foreclose. *Id.* at 2 (citing *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy. N.D. Ohio 2000)("Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law.")). Relying on *In Re Foreclosure Cases*, Plaintiffs allege that because BANA has not provided evidence that "native title in Indian country" was ever extinguished with respect to the Property at issue, Defendants do not hold an interest in the Property, relieving Plaintiffs of their obligation to repay their mortgage loans. *See* ECF No. 1, Ex. 1 at 3. In other words, Plaintiffs claim that BANA did not have a valid right to the land at the time the loans were signed and therefore Plaintiffs are not required to repay their loans.

There are a number of issues with Plaintiffs argument. First, Plaintiffs do not provide any factual support that the land in question is, in fact, "Indian country." Plaintiffs have also not provided, nor has this Court found, any statutory authority for the proposition that a piece of land is considered "Indian country" unless native title is extinguished. *See generally* ECF No. 1, Ex. 1.

Second, assuming without deciding that Plaintiffs even have standing to raise this issue, the Court concludes that Plaintiffs have released any claim adverse to the executed mortgage

agreements. Although Plaintiffs argue that no entity had proper title to the Property at the time the loans were executed, Plaintiffs actions directly refute this assertion. At the time Plaintiffs entered into the Mortgage agreements, they acknowledged before a notary that they had the right to mortgage, grant, and convey the Property, and that the Property was unencumbered. ECF No. 16, Ex. 2 at 4. Having received the benefit of those assertions to acquire the loans at issue in this case, Plaintiffs are precluded from now asserting a defect in title as a defense to their personal mortgage obligations. *Dubail v. Med. W. Bldg. Corp.*, 372 S.W.2d 128, 132 (Mo. 1963) (Stating that a party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens). Therefore, the Court concludes that even if there was a defect in title, Plaintiffs released any resulting claim adverse to their obligations to repay the Mortgages under the agreement.

Accordingly, the Court concludes that Plaintiffs have not alleged facts sufficient to state a claim to quiet title to the property.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motions to dismiss (ECF Nos. 5, 13) should be **GRANTED**, Plaintiffs' motion to deny Defendants' motion to dismiss (ECF No. 21) be **DENIED**, and this case **DISMISSED WITH PREJUDICE**.

DATED: October 9 2015          *s/Franklin L. Noel*
                                FRANKLIN L. NOEL
                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 23, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief

within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 23, 2015,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.